DENNIS R. BAGNERIS, SR., Judge.
_[iThis matter involves a slip and fall accident that happened at Tommy’s Cuisine Restaurant. Plaintiffs, Kathleen Hill Tilden and James Tilden, appeal the trial *963 court judgment in favor of defendants, Blanca, L.L.C., 746 Tchouptioulas, L.L.C., 752 Tchoupitoulas, L.L.C., and Essex Insurance Company (collectively, “Tommy’s”). Finding that plaintiffs failed to prove that a condition existed at Tommy’s that caused the fall, we affirm the judgment.
FACTS
Kathleen Tilden and some co-workers went to Tommy’s on December 12, 2006, for an office Christmas celebration. First, each had a drink in the wine bar section of the restaurant. Thereafter, the owner of the restaurant, Tommy Andrade, escorted Mrs. Tilden and her party to their table in the dining area. Upon entering the dining area, she fell, resulting in alleged injuries to her shoulder, back, and neck. The ensuing lawsuit filed by Mrs. Tilden and her husband, James Tilden, alleged that she slipped on a slippery, wet surface and asserted that the accident 1 ^occurred because Tommy’s failed to properly maintain its flooring and failed to warn of a hazardous condition.
Prior to trial, Tommy’s filed a Motion in Limine to exclude testimony from plaintiffs’ witnesses who claimed that after the accident, Tommy’s placed additional rugs on the floor and who also claimed to have seen a waiter slip. Tommy’s argued that the post-accident rugs testimony should be excluded because La. C.E. art. 407 provides that evidence of subsequent remedial measures is not admissible to prove negligence. Tommy’s also contended that the waiter’s alleged slip should be excluded because Mrs. Tilden’s witnesses differed as to where the waiter slipped and none could say what caused the slip.
The plaintiffs countered that the post-accident rugs testimony should be admitted under the exceptions to La. C.E. art. 407 that permit evidence of subsequent remedial measures for another purpose, such as proving ownership, authority, knowledge, control, or feasibility of precautionary measures, or for attacking credibility. In this case, plaintiffs contended that testimony as to the post-accident addition of the rugs should be admitted for the purpose of showing that 1) Tommy’s had knowledge that the floors of the 150 year-old restaurant had a tendency to “sweat” during weather changes; 2) establishing the feasibility of precautionary measures; and 3) attacking Tommy Andrade’s credibility because he had previously given deposition testimony that no rugs were placed on the floor after the accident. The plaintiffs added that the testimony regarding the “slipping” 1 ¡¡waiter should be admitted because it happened at substantially the same place, same time, and under similar conditions as Mrs. Tilden’s fall.
The trial court allowed the testimony regarding the waiter, noting that the alleged slip happened near in time and place to Mrs. Tilden’s slip and fall. On the other hand, the trial court excluded testimony regarding the post-accident placement of the rugs. It considered admitting the testimony to attack Mr. Andrade’s credibility based on plaintiffs’ assertion that Mr. An-drade had previously testified in his deposition that additional rugs were not used after the accident. Upon review, however, the trial court concluded that Mr. An-drade’s deposition testimony made no such clear-cut declaration. Instead, he testified that that he did not remember if he had asked any restaurant personnel to put out additional rugs after Mrs. Tilden’s fall. Accordingly, the trial court determined that any evidence as to the post-accident rug placement was inadmissible evidence of subsequent remedial measures.
At trial, Mrs. Tilden stated that it was humid and somewhat misting on the evening of the fall. In regards to the fall itself, she testified that she walked directly behind Mr. Andrade, followed by co-workers, Carolyn Guidry, Natasha Arabie, *964 Lynn Scarengos, and her boss, Dr. Gizelle Richard. As she walked about two or three feet into the dining area, her feet went out from underneath her and she fell backwards. Mrs. Tilden did not identify any particular defect or condition of the floor that caused her to fall. She said she stayed with her party after the fall ¡¿because they had all ridden in one car together and she did not want to ruin the fun for everyone else.
Carolyn Guidry testified that it was somewhat rainy, very humid, and damp on the day of the accident. She was right behind Mrs. Tilden when she fell. She represented that when she helped Mrs. Tilden get to her feet, she felt that Mrs. Tilden’s shirt and pants were soaked and wet. Ms. Guidry first noticed that the floor looked shiny, wet, and damp after she sat down at their table. Ms. Guidry stated that when Mr. Andrade came to their table and gave Mrs. Tilden an ice pack, he told Mrs. Tilden that the restaurant was having trouble controlling the floor because of dampness. She added that she also saw a waiter, who was waiting on a table on the other side of their table and carrying a tray, lose his balance.
On cross-examination, Ms. Guidry acknowledged that she had been to Tommy’s about three or four times before the accident. On those occasions, she found that the restaurant was clean and well maintained; she never noticed any substances on the floor. Ms. Guidry also admitted that on the accident date, she never noticed anything slippery about the flooring before the -fall, Ms. Guidry verified that she did not touch the floor and admitted that she did not see any puddles or drops of water on the floor. She relayed that after the fall, the group tried to figure out what had happened. However, she never heard Mrs. Tilden offer any explanation as to why she fell. Ms. Guidry also conceded that she had previously testified in her deposition that she did not feel Mrs. Til-den’s clothes and | Bthat she did not remember the exact words that Mr. Andrade spoke to Mrs. Tilden when he came to their table.
Lynn Scarengos testified that she did not see the actual fall. After the fall, she inspected Mrs. Tilden’s shoes. However, she did not touch the floors. She also described that she saw a waiter, who was carrying a tray, slip. She claimed that she almost slipped in another part of the restaurant on a slight incline.
On cross-examination, Ms. Scarengos stated that when she previously visited Tommy’s, the restaurant was well-maintained. Ms. Scarengos testified that she did not notice that Mrs. Tilden’s clothes were wet. Ms. Scarengos admitted that she did not see any beads or puddles of water on the floor nor did she observe any sweating or condescension on the floor. She also did not see any moisture on Mrs. Tilden’s shoes or anything that would cause her to fall.
Tommy Andrade, the owner, testified that the restaurant is cleaned at the close of each business day. He said that he and his wait staff had a meeting in the dining area about an hour and a half before Mrs. Tilden’s fall. No one saw or reported a problem with the flooring. Mr. Andrade testified that as part of his owner’s responsibility to greet customers and to be aware of everything that is happening in the restaurant, he had walked the area where Mrs. Tilden fell about thirty or forty times before the fall. He said that the floor was not slippery. He stressed that none of his wait staff or other customers told him that the floor was slippery before the accident. Mr. Andrade did not think that Mrs. Til-den slipped; in his estimation, she seemed to have fainted. He said he tried to reach out to | fibreak her fall. Mr. Andrade denied telling Mrs. Tilden or anyone in her party that the restaurant was having trou *965 ble controlling its floors because of wetness or dampness. He stated that he complimented Mrs. Tilden and her party their meals out of a sense of customer service, not as any admission that the floor was defective. He declared that the floor was not sweating, shiny, or wet, and that the restaurant had no history of “sweating” floors. Mr. Andrade did not observe any wetness on Mrs. Tilden’s clothes.
Mr. Andrade reiterated on cross-examination that he was unaware of any “sweating” floor problem and that he was not familiar with the concept. He acknowledged that he had traversed the area where Mrs. Tilden fell numerous times before the fall and did not issue any warning as to the floor’s condition. He explained that he issued no warning because he did not observe any problem with the floor. He also was unaware of any previous slip and falls accidents at the restaurant.
At the conclusion of the trial, the jury assessed no fault against Tommy’s. The jury unanimously concluded that no condition at Tommy’s caused Mrs. Tilden’s fall. This appeal followed.
DISCUSSION
Plaintiffs argue on appeal that the trial court erred in excluding evidence regarding the placement of additional rugs after the accident. Plaintiffs contend that the evidence was admissible for the purpose of attacking the credibility of Mr. Andrade; they also represent that the placement of the additional rugs was not an 17excluded La. C.E. art. 407 subsequent remedial measure; but rather, was an admissible remedial measure. Plaintiffs suggest Tommy’s alleged practice of placing additional rugs on the floor as a safety measure to prevent slip and fall accidents had been employed before Mrs. Tilden’s fall. Howevei’, our review of the record shows plaintiffs’ assignments of error lack merit.
The general rule is that evidence of subsequent remedial measures is not admissible to prove negligence or culpable conduct. However, such evidence is admissible when offered for another purpose such as proving ownership, authority, knowledge, control, or feasibility of precautionary measures, or for attacking credibility. Jones v. Parish of Jefferson, 95-659, p. 6 (La.App. 5 Cir. 11/28/95), 665 So.2d 570, 578; see La. C.E. art. 407. With reference to plaintiffs’ claim that testimony regarding the placement of the rugs should have been admitted, we find no inconsistency between the deposition testimony cited by the parties and Mr. An-drade’s trial testimony to admit any post-accident rug testimony into evidence in order to attack Mr. Andrade’s credibility.
We also see no evidence to support plaintiffs’ claim that the placement of additional rugs was an established safety precaution used by Tommy’s before Mrs. Til-den’s fall. The trial record is devoid of testimony by Mr. Andrade or any other witnesses that discussed Tommy’s use of rugs before Mrs. Tilden’s fall. We simply do not know if the rugs were used for safety reasons, aesthetics, or a combination thereof.
|8The trial court is accorded vast discretion concerning the admission of evidence, and its discretion will not be reversed on appeal absent an abuse of that discretion. See O’Neill v. Thibodeaux, 97-1065, p. 12 (La.App. 3 Cir. 3/6/98), 709 So.2d 962, 969. Based on the record before us, we find that the trial court did not abuse its discretion in ruling that evidence of post-accident rug placement was inadmissible as a subsequent remedial measure. Notwithstanding, even had the trial court erred in deciding that the post-accident addition of the rugs was a subsequent remedial measure, plaintiffs’ assignments of error fail because they did not meet *966 their burden of proof to show Tommy’s was at fault in causing Mrs. Tilden’s accident.
The burden of proof that must be met in claims against merchants is outlined in Louisiana Revised Statute 9:2800.6(B) as follows:
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that the risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
In the present matter, none of the plaintiffs’ witnesses, including Mrs. Tilden, could definitively identify what caused plaintiffs fall. Plaintiffs theorized in their briefs and arguments that the fall resulted from a sweating floor within an aging building; however, plaintiffs offered no proof in support of this theory. |flNeither Mrs. Tilden nor her co-workers inspected the floor after the fall. No one touched the floor; no one saw water or puddles or water on the floor. Plaintiffs presented no witnesses to show that Tommy’s had notice of any hazardous condition or that it had any history of sweating floors either before or after the accident. Instead, plaintiffs’ witnesses said that Tommy’s was clean and well-maintained prior to the accident. In short, plaintiffs did not meet their burden of proof as required by La. R.S. 9:2800.6.
Plaintiffs’ evidence or lack thereof supported the jury’s finding that no condition created by Tommy’s caused Mrs. Tilden’s fall. In deciding the effect of an erroneous ruling on the admissibility of evidence, the reviewing court must first determine whether the excluded evidence affected a substantial right of the complaining party. See La. C.E. art. 103. Absent such a showing, the excluded evidence amounts to harmless error. Midland Funding LLC v. Kelly, 2011-0659, pp. 7-8 (La.App. 4 Cir. 12/7/11), 81 So.3d 84, 89. In this case, plaintiffs made no such showing as they failed to prove that a condition at Tommy’s caused the fall. Hence, plaintiffs’ claims that the trial court improperly excluded evidence of post-accident rug placement lack relevancy and do not warrant reversal.
Wherefore, based on the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED
McKAY, C.J., dissents.